1  Michael R. Tenerelli (SBN 78401)
   tenerelli.michael@dorsey.com
2  Bryan M. McGarry (SBN 258156)
   mcgarry.bryan@dorsey.com
3  Spencer C. Sneed (pro hac vice)
   sneed.spencer@dorsey.com
4  **DORSEY & WHITNEY LLP**
   600 Anton Boulevard, Suite 2000
5  Costa Mesa, CA  92626-7655
   Telephone: (714) 800-1400
6  Facsimile:  (714) 800-1499

7  Attorneys for Plaintiffs
   DONALD R. SWORTWOOD, as
8  Trustee for the Donald R. Swortwood
   Trust Dated July 7, 1995; LETITIA
9  H. SWORTWOOD, as Trustee of the
   Letitia H. Swortwood Revocable
10 Trust #1 Dated September 16, 1992;
   SCOTT PANCOAST and
11 BENJAMIN GREENSPAN

12

13             **UNITED STATES DISTRICT COURT**

14        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

15 DONALD R. SWORTWOOD, as Trustee      CASE NO:  **3:13-CV-00362-BTM-BLM**
   for the Donald R. Swortwood Trust Dated
16 July 7, 1995; LETITIA H.             Assigned for all purposes to:
   SWORTWOOD, as Trustee of the Letitia  Hon. Barry T. Moskowitz
17 H. Swortwood Revocable Trust #1 Dated Courtroom 15B
   September 16, 1992; SCOTT
18 PANCOAST, an individual; and         **SECOND AMENDED COMPLAINT**
   BENJAMIN GREENSPAN, an               **FOR:**
19 individual,                            1. **BREACH OF FIDUCIARY DUTY**
                                          2. **IMPOSITION OF A**
20             Plaintiffs,                   **CONSTRUCTIVE TRUST**
                                          3. **BREACH OF CONTRACT**
21        vs.                             4. **FRAUDULENT**
                                             **MISREPRESENTATION**
22 TENEDORA DE EMPRESAS, S.A. DE         5. **NEGLIGENT**
   C.V., a Mexico corporation; and does 1   **MISREPRESENTATION**
23 through 10, inclusive,                6. **DECLARATORY RELIEF**

24             Defendants.

25

26                                       Action Filed:    February 13, 2013
                                         Trial Date:      None Set
27

28

Plaintiffs DONALD R. SWORTWOOD, as Trustee for the Donald R. Swortwood Trust Dated July 7, 1995, LETITIA H. SWORTWOOD, as Trustee of the Letitia H. Swortwood Revocable Trust #1 Dated September 16, 1992, SCOTT PANCOAST, and BENJAMIN GREENSPAN allege:

**PARTIES**

1.      Plaintiff Donald R. Swortwood is an individual residing within San Diego County, California, and is the current Trustee for the Donald R. Swortwood Trust Dated July 7, 1995 (the "Donald R. Swortwood Trust").  Until the closing of the sale of Neology, Inc. ("Neology"), the Donald R. Swortwood Trust was a minority stockholder of the Series A and Series C Preferred Shares of Neology.

2.      Plaintiff Letitia H. Swortwood is an individual residing within San Diego County, California, and is the current Trustee for the of the Letitia H. Swortwood Revocable Trust #1 Dated September 16, 1992 (the "Letitia H. Swortwood Trust"). Until the closing of the sale of Neology, the Letitia H. Swortwood Trust was a minority stockholder of the Series A and Series C Preferred Shares of Neology.

3.      Plaintiff Scott Pancoast is an individual residing within San Diego County, California.  Until the closing of the sale of Neology, Mr. Pancoast was a minority stockholder of the Series A Preferred Shares of Neology.

4.      Plaintiff Benjamin Greenspan is an individual residing within Marin County, California.  Until the closing of the sale of Neology, Mr. Greenspan was a minority stockholder of the Series A Preferred Shares of Neology.  The Donald R. Swortwood Trust, the Letitia H. Swortwood Trust, Scott Pancoast, and Benjamin Greenspan are collectively referred to as the "Minority Stockholders" or "Plaintiffs."

5.      Defendant Tenedora de Empresas, S.A. de C.V. ("Tenedora") is a Mexico corporation.  Until the closing of the sale of Neology, Tenedora was the majority stockholder of the Series A and Series C Preferred Shares of Neology.

6.      Neology is a Delaware corporation that has its principal place of business in the County of San Diego, State of California.  Neology is engaged in the business of

manufacturing, marketing and selling short range radio frequency identification (RFID) tags, tamper-proof labels and document printing, and issuing, tracking and reading systems, and integration of RFID solutions.

7.     Francisco Martinez de Velasco Cortina ("Francisco Martinez") served as the Stockholder Representative in the sale of Neology stock to Smartrac, and as Stockholder Representative, served as the agent for receipt of a purchase money payment to be made by Smartrac to the former Neology stockholders.  Tenedora paid Francisco Martinez, from Tenedora's own share of sale proceeds, post-sale bonuses totaling up to $1.95 million.  Francisco Martinez resigned as Stockholder Representative on effective March 8, 2013, and was dismissed from this action on March 20, 2013.  On information and belief, Kirk Cypel has been appointed successor Stockholder Representative.  To the extent that a successor Stockholder Representative would distribute to Tenedora more than its rightful share of sale proceeds, that distribution would be subject to the Minority Stockholders' claim for a constructive trust.

8.     Smartrac, N.V. ("Smartrac") is a Netherlands corporation and is the current ultimate parent corporation of Neology.  Smartrac is the payor under purchase money obligations to the Stockholders' Representative for the benefit of the stockholders who sold their Neology stock to Smartrac.  To the extent that a future payment would result in a distribution to Tenedora that exceeded its rightful share of sale proceeds, that payment would be subject to the Minority Stockholders' claim for a constructive trust.

<u>**VENUE**</u>

9.     Venue of this action is proper because the subject agreements concern events regarding the sale of the stock of Neology, a Delaware corporation which had its principal place of business in the County of San Diego, State of California.  The Minority Stockholders are informed and believe that Tenedora has acquired a 15% direct or indirect interest in Neology in conjunction with the sale of Neology to Smartrac ("New Neology Interest").

2

## JURISDICTION

10.     A federal district court shall have original jurisdiction over a civil action in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state."  28 U.S.C. §§ 1332(a), (a)(2).  This action is a civil action over which this Court has original jurisdiction because there is diversity of citizenship between Plaintiffs and each of the defendants and the matter in controversy exceeds $75,000.

## FACTUAL BACKGROUND

11.     This dispute arises out of the shareholders sale of their stock in Neology to Smartrac on or about December 21, 2011 (the "Sale").

12.     The holders of Neology's Series A and C Preferred Stock were entitled to receive, prior and in preference to any distribution to the holders of Neology's Common Stock, predetermined fixed distributions from the proceeds of the Sale.

13.     On December 5, 2011, Tenedora, as the holder of a majority of Neology's Series A and C Preferred Stock, gave written notice that it would cause the automatic conversion of all Series A and C Preferred Stock into Common Stock at Sale closing.

14.     Tenedora timed the merger and conversion to eliminate Plaintiffs' liquidation preferences.  Tenedora would not allow the merger to occur until it had converted Plaintiffs' Series A and C Preferred Stock.  But because automatic conversion of those shares would have breached a voting agreement between Tenedora and the Swortwood and Greenspan Plaintiffs and rendered any required board action suspect, Tenedora elected not to convert those shares in the days leading up to the Sale.  Instead, Tenedora gave notice that the Class A and C shares would be converted "immediately before" the effective time of the Sale.

15.     Neology's Certificate of Incorporation ("Certificate"), at Fourth, 4, c, provides:  "Such [voluntary] conversion shall be deemed to have to have been made immediately prior to the close of business on the day of surrender of the shares [except in the case of an underwritten offering of securities pursuant to the Securities Act, when the

tender may be made conditional upon closing]."  The Sale was not an underwritten offering of securities pursuant to the Securities Act.  Tenedora's tender of the Class A and C shares effective "immediately before" the effective time of the Sale was made conditional upon closing.  Tenedora's tender of the Class A and C shares did not conform with the Certificate.  Directors and officers with undivided loyal to Tenedora approved Tenedora's nonconforming tender.

16.     On information and belief, Tenedora tendered its preferred shares for conversion effective December 22, 2011.  The merger occurred on December 21, 2011.

17.     Tenedora's forced conversion of all Series A and C Preferred Stock into Common Stock eliminated the rights of holders of that stock to receive, prior and in preference to any distribution to the holders of Neology's Common Stock, distributions from the proceeds of the Sale.

18.     By eliminating the liquidation preference held by the holders of Series A and C Preferred Stock, Tenedora increased its share of the Sale proceeds from 82% to 92% (an increase of **$2.7 million** – from $22.7 million to $25.4 million – from the closing proceeds alone).  Tenedora gained its enhanced entitlement to proceeds of the Sale at the expense of the Minority Stockholders, whose share of Sale proceeds decreased from 12% to 3% (a decrease of **$2.7 million** – from $3.4 million down to $0.7 million – from the closing proceeds alone).  Tenedora had no business justification for forcing the automatic conversion of all Series A and C Preferred Stock into Common Stock at Sale closing except to increase Tenedora's share of Sale proceeds at the expense of the minority holders of Series A and C Preferred Stock.  Tenedora, by exercising its majority shareholder control over the Series A and C Preferred Stock to eliminate the liquidation preference, breached its fiduciary duties to the Minority Stockholders.  Tenedora's breach of fiduciary duties has damaged the Minority Stockholders in an amount not less than $2,638,203 and up to $3,259,545.

///

### Neology Securities

19.     Neology issued Common Stock and Preferred Stock.  The holders of Series A and C Preferred Stock were entitled to liquidation preferences, in particular, the right to receive, prior and in preference to any distribution to the holders of Neology's Common Stock, predetermined fixed distributions per share from the proceeds of the Sale.  The liquidation preference for Series A Preferred Stock was $1.71 per share.  The liquidation preference for Series C Preferred Stock was $0.50 per share.

20.     Tenedora, as the holder of a majority of the Series A and Series C Preferred Stock, had the power to impose automatic conversion of all Series A and C Preferred Stock into Common Stock by simply converting its own majority shares of the Series A and C Preferred Stock into Common Stock.  At Sale closing, Tenedora converted its Series A and C Preferred Stock into Common Stock, thereby automatically converting all of the Series A and C Preferred Stock into Common Stock.

21.     The consequences of forced conversion of the Series A and C Preferred Stock held by Tenedora and the Minority Stockholders, with the attendant loss of the liquidation preferences, are summarized in the following tables:

///

| Series A Shares | | | | | |
| --- | --- | --- | --- | --- | --- |
| | Series A Shares | % of Series | Liquidation Preference: $1.71 per share | As Converted to Common Stock Value: $0.21 per share | Loss in Value By Conversion |
| Tenedora | 1,529,957 | 52% | $2,616,226 | $319,877 | $2,296,349 |
| D. Swortwood Trust | 661,653 | 22% | $1,131,427 | $138,336 | $993,091 |
| L. Swortwood Trust | 661,653 | 22% | $1,131,427 | $138,336 | $993,091 |
| Benjamin Greenspan | 54,095 | 2% | $92,502 | $11,310 | $81,192 |
| Scott Pancoast | 38,384 | 1% | $65,637 | $8,025 | $57,612 |

| Series C Shares | | | | | |
| --- | --- | --- | --- | --- | --- |
| | Series C Shares | % of Series | Liquidation Preference: $0.50 per share | As Converted to Common Stock Value: $0.21 per share | Loss in Value By Conversion |
| Tenedora | 23,055,433 | 76% | $11,527,717 | $4,820,337 | $6,707,380 |
| D. Swortwood Trust | 1,727,387 | 6% | $863,694 | $361,155 | $502,539 |
| L. Swortwood Trust | 1,727,387 | 6% | $863,694 | $361,155 | $502,539 |

22.    The distribution value of Tenedora's Series A and C Preferred Stock thus dropped from $14 million to $5 million.  And the distribution value of the Minority Stockholders' Series A and C Preferred Stock thus dropped from $4 million to $1 million.  The value lost by the holders of the Series A and C Preferred Stock was gained by the holders of the Common Stock, increasing its value in the Sale from a penny a share to 12 cents per share.

23.    Tenedora, unlike the Minority Stockholders, also held Series D Preferred Stock, Series E Preferred Stock, and Series F Preferred Stock, totaling in the aggregate 146,950,000 shares.  On weighted average, those shares had a liquidation preference of less than $0.10 per share.  By converting those shares into Common Stock having a value of $0.21 per share, Tenedora was able to capture the value lost by the Minority Stockholders, thereby increasing its overall share of the Sale proceeds from $30.3 million

SECOND AMENDED COMPLAINT
13CV00362

to $33.7 million.  Tenedora had no business justification for forcing conversion of all Series A and C Preferred Stock into Common Stock at Sale closing except to increase its share of the Sale proceeds at the expense of the Minority Stockholders.

### **Tenedora Schemes to Evade or Terminate the Voting Agreement.**

24.     When it was initially proposed that Tenedora invest in Neology, ChinaVest V, L.P. ("ChinaVest") and the Swortwoods were greatly concerned that Tenedora would dominate their interests.  Tenedora, the Swortwoods, and other principal stockholders thus entered into a Voting Agreement dated October 12, 2004.  Sections 1 and 2 of the Voting Agreement entitled Tenedora to designate one Series C director, the Swortwoods to designate one Series A director, and ChinaVest to designate one Series A director. The Voting Agreement, in Section 8, required any successors in interest to sign an agreement substantially in the form of the Voting Agreement.  Under Section 12, no rights were assignable.  And Section 19, the Further Assurances clause, obligated each party "to effectuate in good faith the intent of the parties."

25.     Under the Voting Agreement — and the Further Assurances clause in particular — the parties constrained their rights as stockholders.  Among other things, they limited their right to acquire additional stock if such acquisition would upset the delicate, negotiated balance of power established by the Voting Agreement.  And the parties constrained their right to convert Series A Preferred Stock in a manner that would eliminate either or both of the Series A Directors, which were to be controlled by the Swortwoods and ChinaVest.

26.     Within months after entering into the Voting Agreement, Tenedora began scheming to evade and terminate the Voting Agreement in order to "acquire absolute control" of Neology.

27.     The Voting Agreement provides, at Section 20, "If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled."

**Tenedora Secretly Acquires ChinaVest's Shares.**

28.     ChinaVest was the holder of approximately 1,529,957 shares of Series A stock, which was approximately 52% of the total number of shares of Series A stock. ChinaVest was also the holder of approximately 6,000,987 shares of Series C stock.  In late 2009, ChinaVest planned to sell its Series A and C Shares for $0.05 per share, which was significantly below the Series A stock's liquidation value of $1.71 per share and the Series C stock's liquidation value of $0.50 per share.  The Swortwood Trusts considered purchasing ChinaVest's shares, but they were informed that ChinaVest planned to sell the shares to two individuals:  Barry Cropper and Francisco Martinez.  Based on this representation, the Swortwood Trusts took no steps to acquire ChinaVest's shares.  The Swortwood Trusts later discovered that Tenedora — not Barry Cropper and Francisco Martinez — had purchased ChinaVest's shares.

29.     Tenedora acquired the ChinaVest shares by creating the appearance to Plaintiffs that the shares would be acquired by, or for the benefit of, Barry Cropper and Francisco Martinez and perhaps by Ramon Bautista.  From the time it learned that the ChinaVest shares were for sale, Tenedora intended that those shares would be acquired by or for its own benefit so that it could control the board of directors and acquire the power to force the conversion of all Class A Preferred Stock to common for the benefit of its Tenedora's Class D, E and F Preferred Stock.  Only at the last moment did Tenedora openly acquire the ChinaVest shares.  Later upon the Sale, Tenedora paid Francisco Martinez, from Tenedora's own share of sale proceeds, post-sale bonuses totaling up to $1.95 million.

30.     Tenedora's acquisition of ChinaVest's Series A shares undermined the Voting Agreement.  By acquiring or controlling ChinaVest's right to designate one of the Series A Directors, Tenedora frustrated Plaintiffs' intent under the Voting Agreement to prevent Tenedora from dominating the board of directors.

31.     The transfer of ChinaVest's Series A Preferred Stock also gave Tenedora majority stockholder power over the Series A Preferred Stock, including the power to

impose automatic conversion of all Series A Preferred Stock into Common Stock. Neither ChinaVest, nor the two individuals who were slated to purchase ChinaVest's shares would have had any incentive to convert the Series A Preferred Stock to Common Stock.  Tenedora, on the other hand, stood to gain substantially — at the direct expense of the Minority Stockholders — by converting the Series A Preferred Stock into Common Stock upon a sale of Neology.  At or about the time Tenedora acquired the ChinaVest Shares, Neology engaged an investment bank in connection with possible sales of Neology to suitors which had approached Neology, including Smartrac.

32.     In or about December, 2011, Smartrac acquired Neology for a purchase price of $39 million.

33.     As a result of its acquisition of the ChinaVest Class A Preferred Stock through fraud, deceit, concealment, and/or nondisclosure, Tenedora benefitted in the amount of $2,539,729, the difference between the amount it paid for the ChinaVest shares and the liquidation preference value of those shares upon the Sale.  As a result of its acquisition of the ChinaVest Class C Preferred Stock through fraud, deceit, concealment, and/or nondisclosure, Tenedora benefitted in the amount of $2,700,444, the difference between the amount it paid for the ChinaVest Class C Preferred Stock and the liquidation preference value of those shares upon the Sale.  Tenedora thus benefited from its acquisition of the ChinaVest Stock in the total amount of $5,240,172 (the "ChinaVest Stock Profits").

### The Final Payment

34.     The Sale was structured so that approximately $30 million (less transaction costs and closing adjustments) would be paid at Sale closing and the balance, contingent on Neology's performance, would be paid in the first quarters of 2012 and 2013.  To date, approximately $27.6 million of the $39 million purchase price has been paid. Depending upon Neology's 2012 performance, an additional payment of up to $9 million is payable to the Stockholders' Representative for disbursement to the former Neology

stockholders, including the Minority Stockholders and Tenedora (the "Final Payment"). On information and belief, the Final Payment will be $1.2 million.

35.     On information and belief, the Stockholders' Representative, would, but for the preliminary injunction issued by the Court, disburse to Tenedora 92% of the Final Payment.  On information and belief, Smartrac will make its Final Payment and the Stockholders' Representative would make the final disbursement of Sale proceeds imminently.  Because Tenedora is a Mexico corporation, any portion of the Final Payment disbursed to Tenedora will be beyond the jurisdiction of the U.S. District Courts.

### FIRST CAUSE OF ACTION

### (**Declaratory Relief:  The Automatic Conversion Provision**)

36.     The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 35.

37.     The Certificate, at Fourth, 4, b, providing for automatic conversion of minority Class A and C Preferred Stock upon conversion of a majority of Class A and C Preferred Stock, is not reasonably expected to operate where, as here, a majority stockholder coverts for the sole purpose of expropriating the proceeds of the minority stockholders' Class A and C Preferred Stock liquidation preferences.

38.     A judicial declaration that Tenedora's tender of its Class A and C Preferred Stock was ineffective to cause automatic conversion of Plaintiffs' Class A and C Preferred Stock is necessary and appropriate at this time under the circumstances in order that the Sale proceeds may be properly allocated among the parties.

### SECOND CAUSE OF ACTION

### (**Declaratory Relief:  Tenedora's Ineffective Tender**)

39.     The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 38.

40.     Neology's Certificate of Incorporation ("Certificate"), at Fourth, 4, c, provides:  "Such [voluntary] conversion shall be deemed to have to have been made

immediately prior to the close of business on the day of surrender of the shares [except in the case of an underwritten offering of securities pursuant to the Securities Act, when the tender may be made conditional upon closing]." The Sale was not an underwritten offering of securities pursuant to the Securities Act. Tenedora's tender of the Class A and C Preferred Stock effective "immediately before" the effective time of the Sale was made conditional upon closing of the Sale. Tenedora's tender of the Class A and C shares did not conform with the Certificate.

41. On information and belief, Tenedora tendered its preferred shares for conversion effective December 22, 2011. The merger occurred on December 21, 2011.

42. A judicial declaration that Tenedora's tender of its Class A and C Preferred Stock was ineffective to cause automatic conversion of Plaintiffs' Class A and C Preferred Stock is necessary and appropriate at this time under the circumstances in order that the Sale proceeds may be properly allocated among the parties.

## THIRD CAUSE OF ACTION

### (**Tenedora's Breaches of Voting Agreement**)

43. The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 42.

44. By pursuing strategies to evade or terminate the Voting Agreement in order to "acquire absolute control" of Neology, Tenedora breached the Voting Agreement, including without limitation the Further Assurances provision and the implied duty of good faith and fair dealing.

45. By acquiring the ChinaVest Series A Preferred Stock, Tenedora breached the Voting Agreement, including without limitation the Further Assurances provision and the implied duty of good faith and fair dealing.

46. By forcing the automatic conversion of all Series A Preferred Stock prior to merger, Tenedora eliminated the Swortwoods' designated Series A Director in breach of the Voting Agreement, including without limitation the Further Assurances provision and the implied duty of good faith and fair dealing.

47.     Plaintiffs have been damaged in an amount to be proven at trial by Tenedora's breach of the Voting Agreement.

48.     Tenedora would be unjustly enriched by retaining the proceeds of the ChinaVest Class A Preferred Stock liquidation proceeds.

49.     By its breaches of the Voting Agreement, Tenedora acted with malice and in conscious disregard of the Minority Stockholders' rights, such as to constitute oppression or malice as contemplated by California Civil Code Section 3294.  Plaintiffs, therefore, are entitled to punitive damages in an amount appropriate to punish or set an example of Tenedora.

## FOURTH CAUSE OF ACTION

### (**Tenedora's Breach of Fiduciary Duty: Acquisition of ChinaVest Shares**)

50.     The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 49.

51.     At all times relevant to this action, Tenedora held at least 82% of Neology shares in all classes combined.  As the majority stockholder of all shares, and as the majority holder of the Class C Preferred Stock, Tenedora owed a fiduciary duty to the Minority Stockholders.  Specifically, Tenedora had a fiduciary duty of loyalty to deal honestly with Plaintiffs and not to enrich itself at Plaintiffs' expense.

52.     Tenedora breached this duty by purchasing the ChinaVest Series A and C Preferred shares through fraud, deceit, concealment, nondisclosure, and/or omission for the purposes of enriching itself financially and/or gaining control of Neology at Plaintiffs' expense.

53.     Tenedora benefitted through its breach of fiduciary duty in the amount of ChinaVest Stock Profits, the difference between the amount it paid for the ChinaVest Series A and Series C Preferred Shares and the amount it received for them in the Sale.

54.     Tenedora must disgorge its ChinaVest Stock Profits obtained through breach of fiduciary duty.

55.     By obtaining the ChinaVest Series A and C Preferred Shares through fraud, deceit, concealment, and/or nondisclosure for the purposes of enriching itself financially and/or gaining control of Neology at the Minority Stockholders' expense, Tenedora acted with malice and in conscious disregard of the Minority Stockholders' rights, such as to constitute oppression or malice as contemplated by California Civil Code Section 3294. The Minority Stockholders, therefore, are entitled to punitive damages in an amount appropriate to punish or set an example of Tenedora.

## FIFTH CAUSE OF ACTION

### (Tenedora's Breach of Fiduciary Duty: Conversion of Class A and C Shares)

56.     The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 55.

57.     At all times relevant to this action, Tenedora was the majority holder of the Series C Preferred Stock.  Upon purchasing the ChinaVest Series A Preferred Shares,Tenedora became the majority holder of the Series A Preferred Stock, as well as the Series C Preferred Stock.  As the majority stockholder of the Series A and C Preferred Stock, Tenedora owed a fiduciary duty to Plaintiffs, who were each minority stockholders of the Series A and C Preferred Stock.  Specifically, Tenedora had a fiduciary duty to exercise its ability to control the conversion of the Series A and C Preferred Stock into Common Stock in a fair, just and equitable manner, including a duty not to use its power as a majority stockholder of the Series A and C Preferred Stock to benefit itself alone to the detriment of the minority holders of the Series A and C Preferred Stock.

58.     Tenedora breached this duty by forcing the conversion of all Series A and C Preferred Stock into Common Stock at the Sale closing.  Tenedora had no business justification for forcing the automatic conversion of all Series A and C Preferred Stock into Common Stock at Sale closing except to eliminate the liquidation preference to which the minority holders of Series A and C Preferred Stock were entitled and thereby

increase Tenedora's share of Sale proceeds at the expense of those minority stockholders.

59.     Tenedora, by exercising its majority shareholder control over the Series A and C Preferred Stock to eliminate the liquidation preference, breached its fiduciary duties to the Minority Stockholders.  Tenedora's breach of fiduciary duties has or will directly and proximately damage the Minority Stockholders in an amount equal to the difference between (i) the total amount of Sale proceeds that would be disbursed to the Minority Shareholders on account of their Series A and C Preferred Stock had Tenedora not forced its conversion into Common Stock and (ii) the total amount of Sale proceeds that would be disbursed to the Minority Shareholders on account of their Series A and C Preferred Stock as a result of Tenedora's forced conversion of that stock into Common Stock (the "Underdistribution").  The amount of the Underdistribution is not less than $2,638,203 and up to $3,259,545.

60.     By converting all of the shares of Series A and Series C Preferred Stock to Common Stock with the intent to eliminate the liquidation preference to which the Minority Stockholders were entitled, and to thereby usurp proceeds of the Sale to which the Minority Stockholders were entitled, Tenedora acted with malice and in conscious disregard of the Minority Stockholders' rights, such as to constitute oppression or malice as contemplated by California Civil Code Section 3294.  The Minority Stockholders, therefore, are entitled to punitive damages in an amount appropriate to punish or set an example of Tenedora.

## SIXTH CAUSE OF ACTION

### (Fraudulent Misrepresentation)

61.     The Minority Stockholders incorporate by reference the allegations set forth in paragraphs 1 through 60.

62.     Tenedora falsely represented directly or indirectly to the Plaintiffs that Francisco Martinez, Barrie Cropper and/or others would purchase the ChinaVest Class A and C shares.

63.    Tenedora falsely represented to Francisco Martinez, Barrie Cropper, and/or others that it would aid Francisco Martinez, Barrie Cropper, and/or others in purchasing the ChinaVest shares.  Tenedora made these representations to these third parties with the intent that Plaintiffs would learn of and rely on the representations.

64.    Tenedora concealed and failed to disclose to Plaintiffs the fact that Tenedora intended to purchase the ChinaVest shares.

65.    At the time of its false representations, concealment, and nondisclosure of the true facts about the upcoming sale of ChinaVest shares, Tenedora intended to purchase those shares for itself and therefore knew its representations were false.

66.    Tenedora intended through its false statements, concealment, and nondisclosure to induce Plaintiffs to rely on its fraudulent communications by refraining from purchasing the ChinaVest shares.

67.    Plaintiffs justifiably relied on Tenedora's fraudulent statements, concealment, and nondisclosure by refraining from purchasing the ChinaVest shares. Had Plaintiffs known of Tenedora's intent to purchase the ChinaVest shares, Plaintiffs would have purchased those shares themselves.

68.    Plaintiffs were damaged as a result of Tenedora's fraud at the time of the closing of the Sale, in an amount not less than the ChinaVest Stock Profits, $5,240,172.

## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

69.    The Minority Stockholders incorporate by reference the allegations set forth in paragraphs 1 through 68.

70.    Tenedora falsely represented to the Plaintiffs that Francisco Martinez, Barrie Cropper, and/or others would purchase the ChinaVest Class A shares.  Tenedora lacked reasonable ground for believing its representation to be true.

71.    Tenedora intended to induce Plaintiffs to rely on its false representations by refraining from purchasing the ChinaVest shares.

72.     Plaintiffs justifiably relied on Tenedora's false statements, by refraining from purchasing the ChinaVest shares.

73.     Had Plaintiffs known of Tenedora's intent to purchase the ChinaVest shares, Plaintiffs would have purchased those shares themselves.

74.     Plaintiffs were damaged by Tenedora's misrepresentations at the time of the closing of the Sale, in an amount not less than the ChinaVest Stock Profits, $5,240,172.

## EIGHTH CAUSE OF ACTION

### (Imposition of Constructive Trust)

75.     The Minority Stockholders incorporate by reference the allegations set forth in paragraphs 1 through 74.

76.     As a direct consequence of forcing the conversion of all Series A and Series C Preferred Stock into Common Stock and the resulting elimination of the liquidation preferences to which the holders of the Series A and Series C Preferred Stock were entitled, Tenedora has received or will receive an overdistribution of Sale proceeds in an amount equal to or greater than the Underdistribution to the Minority Shareholders. Under these circumstances, a portion of the Final Payment that would otherwise be distributable to Tenedora, in an amount not less than the Underdistribution, rightfully belongs to the Minority Stockholders.

77.     California Civil Code section 2224 provides:

> "One who gains a thing by fraud, accident, mistake, undue influence, the violation of trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

78.     Tenedora's proceeds from the Sale, including its share of the Final Payment, are subject to a constructive trust in favor of the Minority Shareholders to the extent of the Underdistribution and the ChinaVest Stock Profits.  The obligation of Smartrac to make the Final Payment is subject to a constructive trust in favor of the Minority Shareholders to the extent of the Underdistribution (but not greater than Tenedora's claim to a share of the Final Payment).   The Stockholders' Representative, upon receipt

of the Final Payment, will hold Tenedora's share of the Final Payment in constructive trust in favor of the Minority Shareholders to the extent of the Underdistribution and the ChinaVest Stock Profits.

79.     To the extent Smartrac or the Stockholders' Representative possess or control any additional monies, profits, gains and/or advantages that would otherwise be paid or go to Tenedora, Smartrac and the Stockholders' Representative hold said monies, profits, gains and advantages in constructive trust for the benefit of the Minority Stockholders.  The Stockholders' Representative is obligated to hold and disburse to Plaintiffs from the Final Payment an amount equal to the Underdistribution and the ChinaVest Stock Profits.

## NINTH CAUSE OF ACTION

### (Declaratory Relief)

80.     The Minority Stockholders herein incorporate by reference the allegations set forth in paragraphs 1 through 79.

81.     An actual controversy has arisen and now exists between the Minority Stockholders and Tenedora concerning their respective rights and duties in that the Minority Stockholders believe that Tenedora breached the Voting Agreement as set forth in the Third Cause of Action, breached its fiduciary duties by converting Series A and Series C Preferred Shares into Common Stock so that it could increase the amount it would receive from the Sale at the expense of the Minority Stockholders and other minority stockholders, and further breached its fiduciary duties by acquiring the ChinaVest Series A and C Preferred Shares through fraud, deceit, concealment, nondisclosure, and/or omission for the purposes of enriching itself financially and/or gaining control of Neology at the Minority Stockholders'expense.  The Minority Stockholders further believe that they are entitled to an increased disbursement from the Final Payment.

82.     The Minority Stockholders desire a judicial determination of their rights and duties and a declaration as to whether (a) Tenedora breached the Voting Agreement, (b)

Tenedora breached its fiduciary duties, and (c) the Minority Stockholders are entitled additional disbursements from the Final Payment.

83.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that the Minority Stockholders and Tenedora may ascertain their respective rights, duties and obligations.  If Tenedora did not breach the Voting Agreement or its fiduciary duties and properly and effectively converted the preferred shares to common, then the Minority Stockholders do not have a right to additional disbursements from the Final Payment; whereas, if Tenedora did breach the Voting Agreement or its fiduciary duties and/or did not properly and effectively convert the preferred shares to common, the Minority Stockholders do have a right to additional disbursements from the Final Payment.

84.    A judicial determination regarding whether Tenedora breached its fiduciary duties to the Minority Stockholders is immediately necessary to prevent the Minority Stockholders, Tenedora and other minority stockholders from losing considerable amounts of money, and to prevent any confusion regarding whether the Minority Stockholders and/or Tenedora have any further rights or obligations.

85.    In order to enforce its rights as a minority stockholder, the Minority Stockholders were required to engage the law firm of Dorsey & Whitney LLP, and, thus, have incurred attorney fees and costs seeking this judicial determination.

## **PRAYER**

WHEREFORE, the Minority Stockholders pray for judgment against Defendants as follows:

1.    For general and special damages against Tenedora in an amount to be determined at trial;

2.    For exemplary or punitive damages against Tenedora, in a sum sufficient to punish and deter;

///

3.     For declaratory judgment that Tenedora's tender of its Series A and C Preferred Stock was ineffective to cause automatic conversion of Plaintiffs' Series A and C Preferred Stock and properly allocating the Sale proceeds among the parties;

4.     For declaratory judgment that Tenedora would be unjustly enriched by retaining the proceeds of the ChinaVest Series A and C Preferred Stock liquidation proceeds;

5.     For an order rescinding Tenedora's purchase of the ChinaVest Series A and C Preferred Stock from ChinaVest;

6.     For judgment that Tenedora, having obtained the ChinaVest Series A and C Preferred Stock through breach of fiduciary duty, must disgorge the profits obtained through ownership of that stock;

7.     For declaratory judgment that Tenedora breached its fiduciary duties to the Minority Stockholders and other minority stockholders by converting the Series A and Series C Preferred Stock into Common Stock and thereby obtaining for itself and at the Minority Stockholders' expense millions of dollars more than it would have otherwise obtained;

8.     For a ruling pursuant to California Civil Code section 2224, which provides that "one who gains a thing by fraud, accident, mistake, undue influence, the violation of trust, or other wrongful act, is, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it," that Tenedora and/or the Stockholders' Representative are obligated to pay, hold and disburse the additional amounts of $3,259,545 plus $5,240,172  (the ChinaVest Stock Profits) from the Sale proceeds in constructive trust for the benefit of the Minority Stockholders;

9.     For an injunction requiring Smartrac to pay into the registry of this Court, for safekeeping until the parties respective rights can be fully and finally adjudicated, a portion of the Final Payment in an amount equal to Tenedora's share of the Final Payment but in an aggregate amount not to exceed $3,259,545, which payment shall be in partial satisfaction of Smartrac's obligation to make the Final Payment;

19

10.    For an injunction requiring Tenedora to pay into the registry of this Court, for safekeeping until the parties respective rights can be fully and finally adjudicated, any and all proceeds of the New Neology Interest in an aggregate amount not to exceed $3,259,545 plus $5,240,172  (the ChinaVest Stock Profits) less the amount of any portion of the Final Payment paid into the registry of the Court;

11.    For an injunction requiring the Stockholders Representative to pay into the registry of this Court, for safekeeping until the parties respective rights can be fully and finally adjudicated, the portion of the Final Payment distributable to Tenedora in an amount not to exceed $3,259,545 plus $5,240,172  (the ChinaVest Stock Profits) less any other payments into the registry of this Court;

12.    For reasonable attorney's fees, costs and necessary disbursements incurred in enforcing the terms of the Voting Agreement;

13.    For reasonable attorney's fees, costs and necessary disbursements incurred in bringing this action; and

14.    For such other and further relief as this Court deems just and proper.


DATED:  September 10, 2013          DORSEY & WHITNEY LLP


                                   By:  s/Bryan M. McGarry
                                        Bryan M. McGarry
                                        mcgarry.bryan@dorsey.com
                                        Attorneys for Plaintiffs

SECOND AMENDED COMPLAINT
13CV00362

## <u>CERTIFICATE OF SERVICE</u>

All Case Participants are registered for the USDC CM/ECF System

***Swortwood, et al v. Tenedora de Empresas, S.A. de C.V., et al***
***Southern District of California Case Number 3:13-CV-00362-BTM-BLM***

**SECOND AMENDED COMPLAINT FOR: 1.  BREACH OF FIDUCIARY DUTY; 2.  IMPOSITION OF A CONSTRUCTIVE TRUST; 3.  BREACH OF CONTRACT; 4.  FRAUDULENT MISREPRESENTATION; 5.  NEGLIGENT MISREPRESENTATION;  6.DECLARATORY RELIEF**

I hereby certify that on September 10, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated:  September 10, 2013                    DORSEY & WHITNEY LLP


                                            By:   *s/Bryan M. McGarry*_____
                                                   Bryan M. McGarry