1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   DONALD R. SWORTWOOD, as Trustee for )   Case No. 13cv362-BTM (BLM)
     the Donald R. Swortwood Trust Dated )
12   July 7, 1995, et al.                )   **ORDER GRANTING IN PART AND**
                                         )   **DENYING IN PART PLAINTIFFS'**
13                      Plaintiffs,       )   **MOTION TO COMPEL PRODUCTION**
     v.                                   )   **OF DISCOVERY**
14                                        )
     TENEDORA DE EMPRESAS, S.A. DE C.V., )   **[ECF No. 64]**
15   a Mexico corporation, et al.         )
                                         )
16                      Defendants.       )
                                         )
17   ─────────────────────────────────

18        Currently before the Court is Plaintiffs' December 27, 2013 motion to compel production

19   of discovery [ECF No. 64 ("MTC")], third party Neology's January 10, 2014 opposition to Plaintiffs'

20   motion to compel [ECF No. 69 ("N. Oppo.")], Defendant Tenedora de Empresas, S.A. DE C.V.'s

21   ("Tenedora") January 10, 2014 opposition to Plaintiffs' motion to compel [ECF No. 71 ("T.

22   Oppo.")], Plaintiffs' January 17, 2014 Reply to Tenedora [ECF No. 73 ("Reply to T.")], and

23   Plaintiffs' January 17, 2014 Reply to Neology [ECF No. 74 ("Reply to N.")].  For the reasons set

24   forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion to compel

25   production of discovery.

26                         **FACTUAL AND PROCEDURAL BACKGROUND**

27        Plaintiffs filed their complaint in this matter on February 13, 2013 [ECF No. 1], an

28   amended complaint on March 22, 2013 [ECF No. 22 ("FAC")], and a second amended complaint

on September 10, 2013 [ECF No. 51 ("SAC")].  This case concerns the shareholders' sale of their stock in Neology to Smartrac on December 21, 2011.  Id. at 4.  Plaintiffs, who were holders of the Series A and C Preferred Stock of Neology, allege that they "were entitled to receive, prior and in preference to any distribution to the holders of Neology's Common Stock, predetermined fixed distributions from the proceeds of the Sale," but that Defendant Tenedora ordered the conversion of all Series A and C Preferred Stock into Common Stock at the sale closing.  Id. at 4.  This action served to eliminate Plaintiffs' liquidation preferences, did not conform with Neology's Certificate of Incorporation, and allowed Tenedora to increase its share of sales proceeds at the expense of Plaintiffs whose share of proceeds from the sale decreased by $2.7 million.  Id. at 5.  Plaintiffs allege that Tenedora's actions breached its fiduciary duties to Plaintiffs and damaged Plaintiffs "in an amount not less than $2,638,203 and up to $3,259,545." Id.

On December 18, 2013, counsel for both parties and Neology jointly contacted the Court regarding a discovery dispute brought by Plaintiffs concerning Defendant's assertion of the attorney-client privilege in response to some of Plaintiffs' discovery requests.  ECF No. 60. During the call, the parties represented that Plaintiffs would receive a privilege log from Neology, Inc. on December 23, 2013 and be prepared to file their motion to compel on December 27, 2013.  Id.  In light of that representation, the Court found it appropriate to set a briefing schedule.  In accordance with that schedule, Plaintiffs filed a motion to compel on December 27, 2013 [MTC].  Defendant and Neology filed timely oppositions on January 10, 2014 [T. Oppo. & N. Oppo.] and Plaintiffs filed two replies on January 17, 2014 [Reply to T. & Reply to N.].  Having reviewed the briefing submitted, and for the reasons set forth below, Plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART.**

## DISCUSSION

The instant discovery disputes concern 557 documents responsive to Plaintiffs' Requests for Production ("RFP") that were withheld by Defendant due to attorney-client privilege, 116 documents responsive to Plaintiffs' document subpoena that were withheld by Neology due to attorney-client privilege, "additional relevant attorney communications" that were identified, and

privileged communications that took place between Defendant and its counsel and between Neology and its counsel that Plaintiffs allege are subject to the fiduciary and crime-fraud exceptions to attorney-client privilege.  MTC at 2.

**A.     Defendant's Privilege Log**

Plaintiffs argue that Defendant's privilege log improperly lists documents as being subject to the attorney-client privilege.  MTC at 13.  Specifically, Plaintiffs argue that Defendant improperly asserted the attorney-client privilege as to the following categories of documents: (1) communications between Neology and Neology's counsel which Defendant received from Neology's attorneys, (2) communications from Defendant's attorneys to Neology representatives, (3) communications between Defendant's counsel, Neology's counsel, and various client representatives, and (4) communications between Defendant's counsel and Smartrac (the purchaser of Neology) and Smartrac's attorneys.  Id. at 13-15.

Defendant contends that the presence of both Defendant's counsel and Neology's counsel does not automatically waive the attorney-client privilege as Plaintiffs suggest.  T. Oppo. at 11. Defendant explains that the confusion regarding the applicability of the privilege stems from the fact that Mr. Alejandro Diez Barroso acted in two different capacities:  as a director of Neology and as a representative of Defendant (a Neology shareholder).  Id. at 10-11.  Defendant agrees with Plaintiffs that conversations between Neology attorneys and Mr. Diez Barroso are not privileged when "Diez Barroso is [communicating] in his capacity as [Defendant's] representative."  Id.  However, Defendant contends that communications between Neology's attorneys and Mr. Diez Barroso when he was communicating in his capacity as a director of Neology are privileged.[1]  Id. at 11.  Defendant contends that the privilege remained in place even when Mr. Fernando Elias-Calles, Defendant's attorney, was involved in the conversations as "Mr. Elias-Calles advised Mr. Diez Barroso in his capacity as a Neology Director, in conjunction with Neology's lawyers."  Id.  Defendant agrees that conversations between Defendant's attorneys and Smartrac (before the merger) are not privileged and will consider producing them, but note that Plaintiffs have not identified any documents that meet this criteria.  Id. at 11-12, fn 5.

---

[1]Defendant acknowledges that the privilege belongs to Neology.  Id. at 11.

Plaintiffs respond that Defendant cannot protect communications on behalf of Neology. Reply to T. at 2.   Plaintiffs argue that "Neology must defend its own privilege" and that Defendant "lacks standing to do so."   Id.   Plaintiffs further respond that Defendant has not established a separate attorney-client privilege relationship between Mr. Elias-Calles and Mr. Diez Barroso and that bringing Mr. Elias-Calles into a communication also brought Defendant into that communication and destroyed any attorney-client privilege.   Id. at 4-5.

The dispute between Plaintiffs and Defendant is governed by Delaware law.[2]   Under Delaware law, the attorney-client privilege protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential and the confidentiality is not waived.   Moyer v. Moyer, 602 A.2d 68, 72 (Del. 1992). The privilege serves "to foster the confidence of the client and enable[s] him to communicate without fear in order to seek legal advice."   Riggs Nat'l Bank v. Zimmer, 355 A.2d 709, 713 (Del.Ch.1976).   In Delaware, the scope of the attorney-client privilege is set out in Rule 502 of the Delaware Rules of Evidence.   Rule 502 states that a communication is privileged if made in confidence:

> for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Del. R. Evid. 502(b).   The rule also extends to the protection of confidential communications involving counsel for separate clients so long as the clients share a "common interest" sufficient to justify invocation of the privilege.   Metro. Bank & Trust Co. v. Dovenmuehle Mortg., Inc., 2001 WL 1671445, *5 (Del. Ch. Dec. 20, 2001).

    1.    <u>Communications Between Neology's Counsel and Mr. Diez Barroso</u>

Defendant correctly states that communications between Neology's counsel and Mr. Diez

---

[2]The Court relies on Judge Moskowitz' determination that Delaware law governs the dispute between Plaintiffs and Defendant.  ECF No. 33 at 4.

Barroso when Mr. Diez Barroso is communicating in his capacity as a Neology Director are protected by Neology's attorney-client privilege, provided the communications are intended to be confidential and the confidentiality is not waived.  T. Oppo. at 10-11;N. Oppo. at 12.  The existence of this privilege, however, does not give Defendant the right to assert the privilege. Under Delaware law, the attorney-client privilege may only:

> be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client or the successor, trustee or similar representative of a corporation, association or other organization, whether or not in existence. A person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

Del. R. Evid. 502(c).  Here, Neology, not Defendant is the client.  Defendant is not Neology's guardian or representative and, therefore, cannot claim the attorney-client privilege on behalf of Neology.  In addition, the fact that Defendant is in possession of Neology's allegedly attorney-client privileged communications indicates that the communications are not privileged as the communications have been shared with individuals or entities not covered by the privilege.[3]

Defendant cannot assert a privilege on behalf of Neology.  Accordingly, Plaintiffs' request to compel these documents is **GRANTED** and Defendant is **ORDERED** to produce communications between Neology's counsel and Mr. Diez Barroso, which are in Defendant's possession, unless the communications are only between Neology's counsel and Mr. Diez Barroso, relate to Mr. Diez Barroso's role as a Neology director, and Mr. Diez Barroso has maintained the confidentiality of the documents.

2.   Communications Between Mr. Elias-Calles and Neology employees

Defendant argues that communications between Defendant's attorney, Mr. Elias-Calles, and Mr. Diez Barroso when he was acting in his capacity as a Neology director are privileged because "Mr. Elias-Calles advised Mr. Diez Barroso in his capacity as a Neology Director, in

---

[3]Defendant does not provide any information regarding where the listed documents were found.  If a communication between Neology's counsel and Mr. Diez Barroso regarding Mr. Diez Barroso's duties as a Neology director was found in the possession of Mr. Diez Barroso and the communication was not shared with other employees of Defendant, the communication would retain its privilege.  If, however, the communication was shared with other employees of Defendant and/or was found in the possession of another employee of Defendant, including Mr. Elias-Calles, then the confidentiality of the privilege has not been maintained and the document must be produced.

conjunction with Neology's lawyers." T. Oppo. at 11.  Defendant argues that it is "not unusual" for a Director of a company to have separate counsel to advise him on issues relating to the directorship, in conjunction with the company's corporate counsel.  Id.  While this may be true, in this case, Defendant has not provided any evidence indicating that Mr. Diez Barroso retained Mr. Elias-Calles to represent him individually in his role as a Neology Director.  Rather, all of the evidence[4] presented to this Court indicates that Mr. Elias-Calles was employed by Defendant and represented Defendant.  As such, any communications between Mr. Elias-Calles and a Neology employee, including Mr. Diez Barroso when he was acting as a Neology Director, are not privileged.[5]  Similarly, any communications between Neology counsel and Mr. Diez Barroso in his role as Neology Director lose their privileged status when Mr. Elias-Calles is present or is included in the communication, or when the communication is shared with Mr. Elias-Calles.

Defendant argues that the privileged communications between Neology's counsel, Neology's employees, Mr. Elias-Calles, and Mr. Diez-Barroso are privileged, because they each had a "common interest" in a transaction with Smartrac. T. Oppo. at 11.  "The common interest doctrine is an exception to the general rule that the attorney-client privilege will be waived following disclosure of privilege matters to a third party." CIF Licensing, LLC v. Agere Systems LLC, 2012 WL 6085368, *8 (D. Del., Dec. 3, 2012)(citing Corning Inc. v. SRUBiosys., LLC, 223 F.R.D. 189, 190 (D.Del. 2004)).  "The Delaware courts seem not to have taken a position on whether the common legal interest must be identical.... [I]t is sufficient to recognize that members of the community of interest must share at least a substantially similar legal interest." Id. (quoting  In Re Teleglobe Communications Corp., 493 F.3d 345, 365 (3rd Cir. 2007) and citing (Xerox Corp. v. Google Inc., 801 F.Supp.2d 293, 303 (D.Del. 2011) (applying common

---

[4]The Court notes that Defendant did not provide a declaration from any employee, including either Mr. Elias-Calles or Mr. Diez Barroso, regarding the "facts" asserted in Defendant's opposition. T. Oppo. Mr. Elias-Calles did submit a declaration in support of Defendant's opposition to the preliminary injunction [ECF No. 63-2] in which he stated that he is "general counsel for Grupo Pegaso, a Mexican industrial conglomerate that includes [Defendant] as one of its members." Id. at 2.

[5]Defendant argues in a footnote, with very little explanation, that communications amongst Neology counsel, Mr. Elias-Calles, and Mr. Francisco Martinez and/or Ms. Malle Vaddi are protected by the attorney-client privilege because Mr. Martinez is a Neology Director and Ms. Vaddi is his assistant. T. Oppo. at 11, fn. 5. Again, Defendant has not established an attorney-client relationship between Mr. Elias-Calles and either Mr. Diez-Barroso, Mr. Martinez, or Ms. Vaddi. Accordingly, the attorney-client privilege does not protect those communications.

6

interest doctrine to entities with "sufficiently imbued" legal interests)).   Several courts have opined that the doctrine requires that the interests be similar, not identical, but must involve primarily legal issues, not commercial issues or interests.  See In re Quest Software Inc. S'holders Litig., 2013 WL 3356034, * 4 (Del.Ch., July 03, 2013); see also CIF Licensing, LLC, 2012 WL 6085368 at *8.  Additionally, the communications must be between lawyers, not members of the community.  See Inventio AG v. ThyssenKrupp Elevator Americas Corp., 2010 WL 9546391, *2 (D. Del., June 17, 2010); see also Del. R. Evid. 502(b) (a communication will be privileged if made in confidence "for the purpose of facilitating the rendition of professional legal services to the client . . . . by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest.").   The party attempting to withhold the communication bears the burden of proving the applicability of the doctrine.   In re Quest Software Inc. S'holders Litig., 2013 WL 3356034 at * 4 .   Defendant has not satisfied this burden.   As discussed above, Defendant has not established that Mr. Diez Barroso retained Mr. Elias-Calles to represent him individually in his role as a Neology Director.   Since Mr. Diez Barroso was not individually represented by counsel, Defendant can not establish the applicability of the common interest doctrine.  Defendant also has not established that the withheld documents were solely between counsel and involved primarily legal, rather than commercial, issues.

Therefore, Plaintiffs' motion to compel communications involving Mr. Elias-Calles and Neology employees, including Mr. Diez Barroso, Mr. Francisco Martinez, and Ms. Malle Vaddi, is **GRANTED**.  The motion is **GRANTED** as to all such communications even if Neology's counsel also is included in the communication.   Defendant is **ORDERED** to produce all relevant communications involving Mr. Elias-Calles and Neology employees.

3.     Communications Between Defendant's Counsel and Smartrac

The parties appear to agree that communications between Defendant's attorneys, Smartrac, and Smartrac's attorneys, at least those preceding the merger, are not subject to the attorney-client privilege.  MTC at 15; see also T. Oppo. at 11-12, fn 5.  Accordingly, the Court **GRANTS** Plaintiffs' request and **ORDERS** Defendant to produce any relevant communications

1    between its attorneys, Smartrac, and Smartrac attorneys.

2    **B.   Defendant's Privileged Communications**

3         Plaintiffs acknowledge that communications between Defendant and its counsel are

4    protected by the attorney-client privilege but argue that the documents should be produced

5    under the fiduciary duty and/or crime fraud exceptions to the privilege.  MTC at 2.  In summary,

6    Plaintiffs argue that Defendant committed a fraud and/or violated its fiduciary duty as a majority

7    shareholder to Plaintiffs, the minority shareholders, beginning when it initially became interested

8    in attempting to purchase the Neology stock held by ChinaVest and continuing through the final

9    conversion of the preferred stock to common stock and the Earnout settlement.  Id. at 16-22;

10   see also id. at 3-11.  As such, Plaintiffs seek all communications with legal advice that lead to this

11   lawsuit including Defendant's "undisclosed purchase of ChinaVest's preferred shares in disregard

12   of the Voting Agreement in 2009, Neology's reissuance of those shares to [Defendant] in breach

13   of its duties to [Plaintiffs], Neology's merger with Smartrac in 2011, including [Defendant's]

14   attempted conversion of all preferred shares to common shares, and Neology's improper

15   reissuance of the purportedly converted shares."  Id. at 20.  Plaintiffs assert that all of the

16   privileged communications during these activities should be produced under one of the two

17   exceptions.  Id.

18        Defendant contends that "Plaintiffs have not come remotely close to demonstrating what

19   they must to invoke [the crime-fraud] exception to the attorney-client privilege. T. Oppo. at 12.

20   Defendant notes that Plaintiffs have not made a "showing of an actual or attempted crime or

21   fraud by" Defendant and that, even if they have, Plaintiffs have "certainly not remotely

22   demonstrated that any confidential communications between [Defendant] and its lawyers were

23   in furtherance of them."  Id. at 13-14.  Defendant further contends that Plaintiffs have "not even

24   submitted enough to warrant in camera review of the communications between Defendant and

25   its counsel."  Id. at 15.  With respect to the fiduciary duty exception, Defendant contends that

26   this exception does not apply here, where a majority shareholder communicated with his

27   separate, non-company counsel.  Id. at 16.  Additionally, Defendant notes that Plaintiffs have

28   not shown good cause, their claims are not "colorable," and their request can be likened to a

fishing expedition as Plaintiffs are seeking all communications between Defendant and its counsel and have made "no effort to tie a specific, discrete set of documents to a particular issue and no effort to show how those specific documents might improve a witnesses' memory." Id. at 20.

Plaintiffs respond that the ChinaVest transaction and subsequent related transactions and activities were fraudulent and breached Defendant's fiduciary duty and that "[a]ny legal advice that [Defendant] received in connection with that transaction is not protected because [Defendant] sought the advice in order to effectuate the transaction and, thus complete the fraud." Reply to T. at 10.

1. Fiduciary Duty Exception

Delaware law recognizes that the attorney-client privilege is not absolute "if the legal advice relates to a matter which becomes the subject of a suit by a shareholder against the corporation." Zirn v. VLI Corp., 621 A.2d 773, 781 (1993). In order to override the attorney-client privilege, Plaintiffs must demonstrate that they enjoy a "mutuality of interest" with Defendant and make a showing of "good cause" which may include "(1) the assertion of a colorable claim; (2) the necessity of the information and the [un]availability of the information from another source; (3) the extent to which the communication is identified as opposed to the extent to which the shareholder [or limited partner] is merely fishing for information; and (4) the requested documents do not disclose strategies or theories relating to the defense of the suit [i.e., documents that would qualify under the work-product doctrine]." Metro. Bank and Trust Co., 2001 WL 1671445 at *3. If Plaintiffs are successful, and making an exception to the attorney-client privilege "will not yield an inequitable result," the fiduciary duty exception will apply. Id.

The Court must first consider whether there is a "mutuality of interest" between Plaintiffs and Defendant at the time the challenged communications were made. While the exception arose out of suits filed by shareholders against the corporation, Delaware law has expanded the doctrine to cover suits filed by minority shareholders against majority shareholders. See Valente v. Pepsico, Inc., 68 F.R.D. 361 (D. Del. 1975); Deutsch v. Cogan, 580 A.2d 100 (Del.Ch. 1990). In such situations, courts have found a mutuality of interest "when a fiduciary (such as a

corporate director) seeks legal advice in connection with actions taken or contemplated in his role as a fiduciary." In Re Fuqua Indus., Inc., 2002 WL 991666, * 3 (Del.Ch. May 2, 2002). In reaching this decision, the court reasoned that there is a mutuality of interest when such legal advice is sought because a director is required to act in the best interest of the corporation and its shareholders. Id.

Here, Plaintiffs argue that Defendant owed a fiduciary duty to Plaintiffs beginning when ChinaVest sought to sell its Neology shares and Mr. Barrie Cropper[6] and Mr. Martinez indicated an interest in buying them. MTC at 20. In making this argument, Plaintiffs merge Neology and Defendant and argue that "Neology's officers and directors, as well as Tenedora–the controlling supermajority shareholder–all owed fiduciary duties to Plaintiffs throughout the relevant events underlying this dispute. When Neology or Tenedora obtained legal counsel regarding these transactions, its attorneys were advising clients who owed fiduciary duties to others, including Plaintiffs." Id. This argument, however, is too broad when applied to Defendant. Plaintiffs do not explain why (or provide legal authority for the argument that) Defendant had a fiduciary duty to Plaintiffs when ChinaVest decided to sell its shares and Defendant decided to purchase them or at any other time prior to when Defendant became the single majority shareholder of Neology's preferred shares. Rather, as found by Judge Moskowitz, Defendant potentially had a fiduciary duty when it became the single majority shareholder of the preferred Neology shares and voted to convert all of the preferred shares into common stock.[7] ECF No. 33. Accordingly, for purposes of this discovery dispute, the Court finds that there was a mutuality of interest between Plaintiffs and Defendant beginning when Defendant became the majority shareholder of the preferred Neology shares regarding the conversion of the preferred stock into common stock and the subsequent sale of Neology. To the extent Defendant sought legal advice on those issues, the communications are governed by the fiduciary duty exception.

This Court must therefore address whether Plaintiffs have demonstrated the requisite

---

[6]Mr. Cropper is the former CEO of Single Chip Systems and Neology.

[7]The Court acknowledges that Defendant has appealed the preliminary injunction order [ECF No. 34] and that Plaintiffs have moved to amend the preliminary injunction [ECF Nos. 57 & 59].

good cause.  First, as discussed above and found by Judge Moskowitz, Plaintiffs have asserted a colorable claim.  Next, the communications Plaintiffs seek (as narrowed by the Court) are necessary to Plaintiffs' claim for breach of fiduciary duty (i.e., the conversion of Class A and C Shares [SAC at 14]) and are not available from another source.  Moreover, the request, as narrowed by the Court, is focused on the alleged misconduct and does not constitute a mere fishing expedition.  Fourth, Defendant has not alleged that the communications contain attorney work-product.  Finally, the Court does not find that making an exception to the attorney-client privilege in this situation will "yield an inequitable result."  Id.

Accordingly, Plaintiffs' motion to compel Defendant's privileged documents under the fiduciary-duty exception is **GRANTED IN PART**.  Defendant is **ORDERED** to produce its attorney-client privileged communications after January 19, 2010 when Defendant paid ChinaVest for its shares through December 21, 2011 when Smartrac acquired Neology, pertaining to the sale of Neology and the conversion of Neology's Series A and C preferred stock into common stock prior to the sale of Neology's stock to Smartrac.

2.   Crime Fraud Exception

Delaware evidence law also recognizes the crime-fraud exception to the attorney-client privilege.  Specifically, "[t]here is no privilege [i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud."  Del. R. Evid. 502(d)(1); see also Princeton Ins. Co. v. Vergano, 883 A.2d 44, 54 (Del. Ch. 2005).  "The crime-fraud exception may apply even though the attorney is neither a participant nor aware of the client's intended crime or fraud."  Matter of Sutton, 1996 WL 659002, *10 (Del. Super. Aug. 30, 1996) (citing United States v. Ballard, 779 F.2d 287, 292 (5th Cir.1986)).  "The attorney may be innocent, and still the truth come out."  Id. (quoting Clark v. United States, 289 U.S. 1, 15 (1933)).  For evidence to fall within crime-fraud exception to attorney-client privilege, a mere allegation of fraud is not sufficient; there must be a prima facie showing that a reasonable basis exists to believe a fraud has been perpetrated or attempted.  Del. R. Evid. 502(d)(1); see also Princeton Ins. Co., 883 A.2d at 54.  "Federal and state courts have struggled with the concept of a 'prima facie' case and

1   have defined the concept in somewhat inconsistent manners." Matter of Sutton, 1996 WL

2   659002 at *10; see also United States v. Zolin, 491 U.S. 554, 563 n. 7 (1989) (observing that

3   the phrase "prima facie case" as used in Clark "has caused some confusion").  While there is no

4   definitive test for determining if the exception applies[8], some courts have found that the "party

5   seeking discovery of privileged communications or documents must prove the crime-fraud

6   exception applies by showing: (1) a prima facie case of criminal or fraudulent conduct, and (2)

7   the communications were made in furtherance of the crime or fraud." Magnetar Technologies

8   Corp. v. Six Flags Theme Park Inc., 886 F.Supp.2d 466, 482 (2012) (citing Hercules, Inc. v.

9   Exxon Corp., 434 F.Supp. 136, 155 (1977)).

10      Plaintiffs have failed to demonstrate the applicability of the crime-fraud exception.  While

11  Plaintiffs allege that Defendant committed fraud by making it appear as though Mr. Cropper and

12  Mr. Martinez would be purchasing the ChinaVest stock and, therefore, not upsetting the Voting

13  Agreement, or creating a situation where a forced conversion of the Series A stock could occur,

14  Plaintiffs have not shown a prima facie case of fraud.  Plaintiffs were aware that ChinaVest's

15  shares were being sold and that Mr. Cropper and Mr. Martinez were interested in purchasing

16  them.  SAC at 9.  Plaintiffs chose not to try to purchase the shares themselves.  Id.  Although,

17  Plaintiffs allege that this decision was based on their belief that Mr. Cropper and Mr. Martinez

18  would be purchasing the shares, Plaintiffs' incorrect beliefs do not mean the sale was fraudulent

19  or that a crime was committed.  Moreover, Plaintiffs have not alleged any efforts they made to

20  verify with Defendant that Defendant was not attempting to purchase the ChinaVest shares or

21  any misstatements made by Defendant in that regard.  Plaintiffs allege that Defendant never

22  intended to sell the shares to Mr. Cropper and Mr. Martinez and that it was always Defendant's

23  plan to acquire the shares so that it could force the conversion of the Series A preferred Stock,

24  but these mere allegations are not enough to satisfy the standard for applying the crime-fraud

25  exception.

26

27      [8]See Finley Associates, Inc. v. Sea & Pines Consol. Corp., 714 F.Supp. 110, 117 (1989) (citing J. Weinstein
28  & M. Berger, Weinstein's Evidence, ¶ 503(d)(1) [01], at 503–71 (1986) (no test under crime or fraud exception to
    attorney-client privilege, but, under Delaware Rule of Evidence 503(d)(1), such absence "has the advantage of leaving
    the question to the good sense of the trial judge")).

1   Accordingly, Plaintiffs' request to apply the crime-fraud exception to Defendant's privileged

2   communications is **DENIED**.

3   **C.    Neology's Privileged Communications**

4   Plaintiffs request that the Court order Neology to produce certain privileged

5   communications as well.  Plaintiffs contend that documents containing communications between

6   only Neology's attorneys and Neology's representatives should be produced under the fiduciary

7   duty exception and the crime fraud exception.  MTC at 2.

8   Neology contends that Plaintiffs "have incorrectly cited Delaware law in support of their

9   arguments."  N. Oppo at 7.  In support, Neology contends that since Plaintiffs have asserted

10  diversity jurisdiction, the Court must apply California law to substantive legal issues.  Id.  Neology

11  further contends that the fiduciary duty exception does not apply to this case because (1) the

12  case that Plaintiffs rely on, Garner[9], has been rejected by California, (2) the legal principles and

13  holding of Garner do not apply to the present facts, (3) the privilege at issue in Garner "belonged

14  to a corporation that was itself a party to the litigation," and (4) this is not a derivative action

15  and "Plaintiffs are seeking their own personal gain without regard to the numerous other minority

16  shareholders."  Id. at 10-11.  Neology further contends that the crime-fraud exception does not

17  apply to Neology as evidenced by the SAC which does not name Neology as a party, does not

18  assert any fraud claims against Neology, and states that Defendant made false representations

19  to Neology's CEO Mr. Martinez.  Id. at 8.  Finally, Neology argues that Plaintiffs must first

20  establish that the crime-fraud exception applies to Defendant which they have failed to do and

21  notes that Plaintiffs "have not addressed the element of the exception which requires that a

22  reasonable relationship exist between any alleged fraud and communications with counsel."  Id.

23  at 9.

24  Plaintiffs reply that "Delaware not California, has the greatest interest in this case and

25  Delaware law should govern privilege issues in this dispute."  Reply to N at 6.  Plaintiffs further

26  reply that Delaware's fiduciary duty exception applies to this matter as California does not have

27  a "special choice of law rule specific to third-party discovery served in California" and that under

28

[9]Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970).

1  a government interest analysis, Delaware privilege law should apply in this case.  Id. at 6-7.

2  Plaintiffs note that Defendant agrees that Delaware law applies and states that the Court should

3  accept that proposition.[10]  Reply to T. at 5.  Plaintiffs also argue that they have established good

4  cause to defeat the privilege as evidenced by the fact that Plaintiffs have already received a

5  preliminary injunction.  Reply to T. at 8.   Plaintiffs note that their request is appropriately

6  tailored to documents that fall within the Garner exception.  Id.  Plaintiffs further reply that

7  Garner applies to this case regardless of the fact that it is not a derivative action and that

8  Neology is a third party as the exception applies where corporate fiduciaries "acted inimically to

9  stockholder interest."  Reply to N. at 8 (quoting Garner, 430 F.2d at 1103).

10         1.   California Privilege Law Applies to Plaintiffs and Neology

11         In an action brought to federal court under diversity jurisdiction, the attorney-client

12  privilege is governed by the state law otherwise applicable to the case.  See Fed.R.Evid. 501.

13  To determine which state law is applicable, "the federal court applies the choice-of-law rules of

14  the forum state."  Paracor Fin., Inc. v. GE Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996).

15  "California applies a governmental interest test to choice-of-law questions, under which, if a

16  difference of law and true conflict between the interests of the competing jurisdictions exist, the

17  Court must apply the law of the state whose interest would be more significantly impaired if its

18  law were not applied."  DeFrees v. Kirkland, 2012 WL 1356495, * 15 (C.D. Cal. April 11, 2012)

19  (citing McCann v. Foster Wheeler LLC, 48 Cal.4th 68, 82 (2010)).

20         As discussed in section B.1. above, Delaware law recognizes that the attorney-client

21  privilege is not absolute "if the legal advice relates to a matter which becomes the subject of a

22  suit by a shareholder against the corporation."  Zirn, 621 A.2d at 781 (citing Valente, 68 F.R.D.

23  361.  Under the fiduciary-duty exception, "shareholders who enjoy a 'mutuality of interest' with

24  corporate management may obtain access to the corporation's confidential communications with

25

26

27

28         [10]Third party, Neology does not agree and argues that California law should govern this issue.  N. Oppo. at 7.

14                                          13cv362-BTM (BLM)

counsel upon a showing of 'good cause.'[11]  In re Freeport-McMoran Sulphur, Inc., 2005 WL 225040, *2 (Del. Ch. Jan. 26, 2005) (citing Oliver v. Boston Univ., 2004 WL 944319, at *2 (Del. Ch. Apr. 26, 2004) and (Kosachuk v. Harper, 2000 WL 1946664, at *1 (Del. Ch. Dec. 19, 2000) ("Delaware courts recognize that a stockholder litigating against his or her corporation may be entitled to discover attorney-client privileged or attorney-work product privileged documents in the possession of the corporation or its counsel where 'good cause' is shown.")).

California also recognizes the fiduciary-duty exception, however, California's view of the exception is much narrower than Delaware's and does not stem from Garner.  Under the California exception, which appears mostly in litigation involving ERISA fiduciaries or insurance companies, "[w]hen a trustee obtains legal advice relating to the administration of a trust, and not in anticipation of adversarial legal proceedings against him or her, the trust beneficiaries have the right to the production of that advice."  William W. Schwarzer, et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 11(III)-B § 11:685 (citing United States v. Jicarilla Apache Nation, (2011) US, 131 S. Ct. 2313, 2322; and Stephan v. Unum Life Ins. Co. of America, 697 F3d 917, 931–932 (9th Cir. 2012) (finding that "the justifications for excepting ERISA fiduciaries from attorney-client privilege apply equally to insurance companies" also serving in the role of ERISA fiduciary)); see also Klein v. Northwestern Mut. Life Ins. Co., 806 F.Supp.2d 1120, 1129 (S.D. Cal. 2011) (stating that the fiduciary duty exception exists "when an ERISA trustee seeks an attorney's advice on a matter of plan administration" and noting "two asserted rationales for this exception: 1) the fiduciary duty to disclose all matters of plan administration overrides the attorney-client privilege; and 2) the fiduciary is not the real client when the advice is sought on behalf of the beneficiaries of the trust.").

---

[11]"[The fiduciary duty] exception … is generally traced back to Garner v. Wolfinbarger, which set forth a framework under which shareholders … can gain access to privileged communications of the corporation…. The court in Garner balanced the harm from disclosure of confidential communications against the benefits to be gained from access to reliable information involving activities of the corporation … which are of particular interest to the shareholders…. Garner recognized that the management function includes communications with counsel and that management has a legitimate concern that its confidential communications should be allowed to remain confidential. Garner also acknowledged the 'fact that management has duties which run to the benefit ultimately of the stockholders.'" Metro. Bank & Trust Co., 2001 WL 1671445, at *2 (citations omitted) (quoting Garner, 430 F.2d at 1101).

1  California does not recognize Garner and does not permit shareholders to discover

2  privileged communications upon a showing of good cause.  See Hoiles v. Superior Court, 157 Cal.

3  App. 3d 1192, 1198 (1984)(stating that "Garner's continued vitality is suspect, however, even

4  in federal courts" and that "it has been squarely rejected in this state in any event" because

5  "[t]he courts of this state, . . .  are not free to create new privileges as a matter of judicial policy

6  and must apply only those which have been created by statute."  "Thus although the [ Garner

7  ] rule … may be a desirable means of preventing abuse of the attorney-client privilege by

8  corporate fiduciaries, this court cannot properly alter the legislative scheme by adopting such a

9  nonstatutory exception.") (citing Dickerson v. Superior Court, 135 Cal.App.3d at p. 99-100)); see

10  also, National Football League Properties Inc. v. Superior Court, 65 Cal.. App. 4th 100,  107

11  (1998) (noting that "[i]n California, the appellate courts have refused to carve out a shareholder

12  exception to the statutory attorney-client privilege accorded to corporations, noting that the

13  Evidence Code precludes judicially created exceptions to the attorney-client privilege" and that

14  "[a]ccordingly, California courts have declined to adopt the federal rule set forth in Garner v.

15  Wolfinbarger . . . . which permits shareholders to inspect corporate attorney-client privileged

16  documents upon a showing of good cause");  Smith v. Laguna Sur Villas Community Ass'n, 79

17  Cal. App. 4th 639, 644 (2000) (quoting Wells Fargo Bank v. Superior Court, 22 Cal.4th 201, 212

18  (2000) and noting that "the Supreme Court refused to create a so-called 'fiduciary' exception to

19  the attorney-client privilege because courts 'do not enjoy the freedom to restrict California's

20  statutory attorney-client privilege based on notions of policy or ad hoc justification'").

21  It is clear that there is a difference of law and a true conflict between the states.

22  Accordingly, this Court must apply the law of the state whose interests would be more

23  significantly impaired if its laws were not applied.[12]  DeFrees v. Kirkland, 2012 WL 1356495, *

24  15 (C.D. Cal. April 11, 2012).  Here, the Court finds that California has the greater interest in

25  having its attorney-client privilege law applied.  While it is true that Neology is incorporated in

[12]As previously stated, the Court recognizes that Judge Moskowitz determined that Delaware law governs the dispute between Plaintiffs and Defendant.  ECF No. 33 at 4.  However, that ruling was in the context of Plaintiffs' motion for a preliminary injunction and was based upon an agreement between Plaintiffs and Defendants only.  Id. Here, the Court must resolve a discovery dispute between Plaintiffs and Neology, who is not a named party in this case.

13cv362-BTM (BLM)

Delaware, its principal place of business is in California and the Court assumes that at least a portions of the communications at issue took place in or were sent to or from California. Connolly Data Systems, Inc. v. Victor Technologies, Inc., 114 F.R.D. 89, *92 (S.D. Cal. 1987) (finding that "[t]he state of domicile of the corporation asserting the attorney-client privilege is an important factor to consider in choosing the law that governs the scope of that privilege"). In addition, the subpoena sent by Plaintiffs requesting the documents at issue was served in California [Reply to N. at 6] and the instant suit was filed in California [ECF No. 1].  Neology's legal counsel, John Cleary, also is located in San Diego, California.  MTC at 10, Exhibits 1-3; see also Reply to T. at Exhibits 1-12.  See DeFrees, 2012 WL 1356495 at * 15 (finding that even if the parties had not included a choice of law provision in their agreement, California substantive law regarding the attorney-client privilege would have applied and that "California has a greater interest in having its law applied in the action and would suffer greater impairment were its law not applied," where Delaware's only connection to the case was that it was the state of incorporation and where the company was headquartered in California "and all relevant events, including the formation and conduct of the attorney-client relationship at issue, occurred in [California]"); see also Connolly Data Systems, Inc., 114 F.R.D. 89, *92 (finding that Massachusetts had little or no interest in having its rule of attorney-client privilege applied where case was filed in Massachusetts, but the corporation asserting the privilege was a "California corporation with its principal place of business in California" and "the substantive communications that are the subject of this dispute took place primarily in California.").  The Court therefore concludes that California's interests would be more significantly impaired if its privilege law was not applied in the instant matter.

       2.   <u>Fiduciary Duty Exception</u>

      Applying California law, the Court finds that the communications at issue are subject to the attorney-client privilege and not subject to the fiduciary-duty exception.  Both sides recognize and admit that the communications between Neology's counsel and Neology's representatives are confidential and protected by attorney-client privilege.  MTC at 18; see also N. Oppo. at 6-7. Plaintiffs argue that the documents should be produced despite attorney-client privilege subject

to the fiduciary-duty exception.  MTC at 18-22.  However, as explained above, California law applies to this issue and California does not recognize the fiduciary-duty exception to attorney-client privilege as explained in Garner.  Hoiles, 175 Cal. App. 2d at 1198.  Consequently, Plaintiffs cannot pierce Neology's attorney-client privilege under the fiduciary-duty exception and Plaintiffs' motion to compel Neology's attorney-client privileged documents using that exception is **DENIED**.

        3.   <u>Crime Fraud Exception</u>

        California law recognizes the crime-fraud exception to the attorney-client privilege.  <u>United States v. Martin</u>, 278 F.3d 988, 1000 (9th Cir. 2002); <u>see also</u> <u>National Football League Props., Inc.</u>, 65 Cal. App.4th at 108.  Specifically, California Evidence Code § 956 provides an exception to the attorney-client privilege "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."  Cal. Evid.Code § 956.  The lawyer does not have to be aware of the fraud for the crime-fraud exception to apply.  <u>State Farm Fire & Cas. Co.</u>, 54 Cal.App.4th 625, 645 (1997).  Instead, "it is the intent of the client upon which attention must be focused and not that of the lawyers."  <u>Id.</u>  The crime-fraud exception is a very limited exception and the "proponent of the exception bears the burden of proof of the existence of crime or fraud."  <u>Geilim v. Superior Court</u>, 234 Cal. App. 3d 166, 174 (1991).  To satisfy the burden, a party must make a prima facie showing that the communication at issue furthered a crime or fraud.  <u>State Farm Fire & Cas. Co.</u>, 54 Cal.App.4th at 643.  A prima facie case under section 956 is made where the proponent of the exception demonstrates sufficient evidence from which reasonable inferences can be drawn to show that the fraud or crime has some foundation in fact.  <u>State Comp. Ins. Fund v. Superior Court</u>, 91 Cal.App.4th 1080, 1090–1091 (2001).  "Mere assertion of fraud is insufficient; there must be a showing the fraud has some foundation in fact."  <u>BP Alaska Exploration, Inc. v. Superior Court</u>, 199 Cal.App.3d 1240, 1262 (1988).  The party seeking production under the crime-fraud exception must show that the (1) "client was engaged in or planning a criminal or fraudulent scheme when he or she sought the advice of counsel to further the scheme;" and (2) "attorney-client communications for which production is sought are sufficiently related to, and were made in

furtherance of, the scheme—i.e., the attorney was consulted not with respect to prior wrongdoing but, rather, to facilitate or conceal a continuing or contemplated crime or fraud." William W. Schwarzer, et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, Ch. 11(III)-B § 11:671 (citing [In re Napster, Inc. Copyright Litig., 479 F3d 1078, 1090 (9th Cir. 2007)). The party seeking discovery must establish the crime-fraud exception by a preponderance of the evidence. Id. at § 11:675 (citing In re Napster, Inc. Copyright Litig., 479 F3d at 1094–1095).

Here, Plaintiffs have failed to show that the crime-fraud exception to the attorney-client privilege applies to Neology. Plaintiffs bear the burden of demonstrating that there has been a crime or a fraud. Geilim, 234 Cal. App. 3d at 174. Plaintiffs have argued that a fraudulent sequence of events allowed Defendant to conceal its plan to acquire the ChinaVest shares and that Defendant used Neology's CEO, Francisco Martinez, to carry out the plan. Reply to N. at 10. Therefore, any legal advice that Mr. Martinez sought about effectuating the sale to Defendant in light of the Voting Agreement, was used to complete the fraud. Id. While Judge Moskowitz issued a preliminary injunction in favor of Plaintiffs, finding that Plaintiffs have demonstrated "that there are serious questions on the merits," those questions concern Defendant, a party to this case, and not Neology. ECF No. 33 at 7. Plaintiffs themselves have stated that "the entire ChinaVest transaction was a fraud perpetrated by [Defendant] on Plaintiffs" and that Defendant "falsely represented to Francisco Martinez, Barrie Cropper, and/or others that it would aid Francisco Martinez, Barrie Cropper, and/or others in purchasing the ChinaVest shares." SAC at 16. "Tenedora made these representations to these third parties with the intent that Plaintiffs would learn of and rely on the representations," and that "it is unclear whether [Francisco Martinez] knew from the beginning that [Defendant] would be keeping the shares or whether he learned that after the fact." Reply to N. at 10; SAC at 16. None of that equates to Neology itself being engaged in or planning a criminal or fraudulent scheme, seeking counsel to further a scheme, or the existence of attorney-client communications in furtherance of a scheme. All of this contrasts sharply with Plaintiffs' statements in the MTC that "Neology aided in th[e] fraud," "created the appearance to Plaintiffs that the ChinaVest stock would be acquired by Barrie

1   Cropper and Martinez, leaving the general power balance struck by the Voting Agreement intact,"

2   and intentionally concealed other important information.   MTC at 17.   Plaintiffs appear to be

3   shifting the blame for the alleged fraudulent conduct between Defendant and Neology as it suits

4   their needs.   Plaintiffs have not included Neology as a defendant in this litigation and the stated

5   allegations are not sufficient to establish fraud by Neology.   Moreover, as set forth above, the

6   Court found that the Delaware crime-fraud exception does not apply to Defendant.   Accordingly,

7   the Court finds that Plaintiffs have not established the crime-fraud exception by a preponderance

8   of the evidence and **DENIES** Plaintiffs' motion to compel Neology's attorney-client privileged

9   documents using that exception.

10  **D.   Neology's Privilege Log**

11       Plaintiffs argue that Neology's privilege log "presents the same problems as [Defendant's]"

12  and improperly asserts privilege as to communications received from Defendant's attorneys and

13  communications from Neology's attorneys to Defendant.   MTC at 15.

14       Neology agrees with Defendant and argues that conversations between Mr. Diez Barroso,

15  Mr. Elias-Calles, Neology executives, and Neology board members are protected by attorney-

16  client privilege.   N. Oppo at 12.   In support, Neology notes that Mr. Diez Barroso was a member

17  of the Neology Board of Directors which means that his participation in conversations did not

18  waive the privilege and that Mr. Elias-Calles was not an outsider and was providing counsel to

19  Mr. Diez Barroso as a Neology director so that "his inclusion in communications [was] reasonably

20  necessary to accomplish  [] the purpose of Neology's consultation of counsel."   Id. at 12-14.

21       Plaintiffs reply that Neology has no privilege for communications with Mr. Elias-Calles as

22  Neology has failed to establish that Mr. Elias-Calles represented the interest of anyone other than

23  Defendant and that communications between Neology's counsel and Mr. Diez Barroso are not

24  privileged "because they were not made with the intent that they be kept confidential."   Reply

25  to N. at 2.

26       Under California law, the attorney-client privilege attaches to confidential communications

27  between a client and his attorney during the course of the attorney-client relationship.   Cal.

28  Evid.Code § 952.   "The party asserting the privilege bears the initial burden of demonstrating

1   that the communication falls within the privilege." <u>Action Performance Companies, Inc. v.</u>

2   <u>Bohbot</u>, 420 F.Supp. 2d. 1115, 1118 (2006) (citing <u>Wellpoint Health Networks, Inc. v. Superior</u>

3   <u>Court</u>, 59 Cal. App. 4th 110, 123 (1997)).  Once an attorney-client relationship is established,

4   communications between attorney and client are presumed to be in confidence, and an opposing

5   party bears the burden of proving the communication was not in confidence.  Cal. Evid.Code

6   § 917.

7         1.   <u>Communications Between Neology and Defendant's Attorney Mr. Elias-Calles</u>

8         Communications between Neology and Mr. Elias-Calles are not protected by the attorney-

9   client privilege.  Initially, since Neology is asserting the privilege, it must demonstrate that the

10  communications fall within the privilege.  Neology has not carried this burden.  Neology argues

11  that conversations involving Mr. Elias-Calles, Defendant's attorney, are protected by attorney-

12  client privilege because Mr. Elias-Calles  "is not an "outsider" to communications among Neology

13  directors, Neology executives, and Neology counsel" because he was providing counsel to Mr.

14  Diez Barroso "as a Neology director appointed by [Defendant], and his inclusion in

15  communications [was] reasonably necessary to accomplish of [sic] the purpose of Neology's

16  consultation of counsel."  N. Oppo. at 14.  However, Neology has not established that there was

17  an attorney-client relationship between Mr. Elias-Calles and Mr. Diez Barroso or Mr. Elias-Calles

18  and Neology.  Mr. Elias-Calles represented Defendant at all times relevant to this litigation and

19  if he provided counsel to Mr. Diez Barroso, Defendant's representative on Neology's board, he

20  presumably did so on behalf of Defendant and to protect Defendant's interests.  Neology is not

21  claiming, and has not established, that Mr. Elias-Calles had a separate client engagement with

22  Mr. Diez Barroso or Neology and as such, Neology has not established an attorney-client

23  relationship meriting the protection of the attorney-client privilege.

24        Accordingly, Plaintiff's motion to compel the production of communications between

25  (1) Neology officers and employees and Defendant's counsel, (2) Neology's counsel and

26  Defendant's counsel, and (3) Neology officers and employees, Neology's counsel, and

27  Defendant's counsel, is **GRANTED**.

28        2.   <u>Communications Between Neology's Attorneys and Mr. Diez Barroso</u>

Given Mr. Diez Barroso's role as a director of Neology, a communication between Neology's attorney and Mr. Diez Barroso is privileged[13] if the communication relates to Mr. Diez Barroso's role as a Neology director and if the confidentiality of the communication was maintained. If, as alleged by Plaintiffs, the communication related to Mr. Diez Barroso's work as an employee or representative of Defendant, or if the confidentiality was not maintained because the communication was shared with Defendant or Defendant's counsel, then the communication is not privileged.

Accordingly, Plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**. Neology is **ORDERED** to produce all communications between its counsel and Mr. Diez Barroso where Mr. Diez Barroso was acting in his capacity as a representative or employee of Defendant and not as a director of Neology. Neology is further **ORDERED** to produce all communications between its counsel and Mr. Diez Barroso that were shared with or given to Defendant, including Mr. Elias-Calles, regardless of the role Mr. Diez Barroso was playing at the time of the communication. Neology does not have to produce any communications between its counsel and Mr. Diez Barroso where Mr. Diez Barroso was acting in his capacity as a director of Neology and the confidentiality of the communication was maintained.

### 3. Communications Neology Received from Defendant's Attorneys

Plaintiffs argue that Neology's privilege log "improperly asserts privilege as to communications it received from [Defendant's] attorneys." MTC at 15. As explained above, communications involving Mr. Elias-Calles are not subject to the attorney-client privilege as there was no attorney-client relationship between Mr. Elias-Calles and Neology. Accordingly, Plaintiffs' motion to compel communications given to Neology by Defendant's attorneys is **GRANTED**.

### **CONCLUSION**

As set forth above, Plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**. In accordance with this Order:

---

[13]Melendrez v. Superior Court of the State of California, 215 Cal. App. 4th 1343, 1353 (2013) ("[a]s a general matter, the power to assert and waive the attorney-client privilege held by a corporation belongs to corporate management and is normally exercised by the corporation's officers and directors") (citing Venture Law Group v. Superior Court (118 Cal.App.4th 96, 105) (2004)).

1.   On or before **March 14, 2014**, Defendant must produce all relevant (1) communications between Neology's counsel and Mr. Diez Barroso, which are in Defendant's possession, unless the communications relate to Mr. Diez Barroso's role as a Neology director and Mr. Diez Barroso maintained the confidentiality of the documents, (2) communications involving Mr. Elias-Calles and Neology employees, including Mr. Diez Barroso, Mr. Francisco Martinez, and Ms. Malle Vaddi, even if Neology's counsel also is included in the communication, (3) communications between its attorneys, Smartrac, and Smartrac attorneys, and (4) attorney-client privileged communications after January 19, 2010 when Defendant paid ChinaVest for its shares through December 21, 2011 when Smartrac acquired Neology, pertaining to the sale of Neology and the conversion of Neology's Series A and C preferred stock into common stock prior to the sale of Neology's stock to Smartrac.

2. On or before **March 14, 2014**, Neology must produce all relevant (1) communications between (a) Neology officers and employees and Defendant's counsel, (b) Neology's counsel and Defendant's counsel, and (c) Neology officers and employees, Neology's counsel, and Defendant's counsel, (2) communications between Neology's counsel and Mr. Diez Barroso where Mr. Diez Barroso was acting in his capacity as a representative or employee of Defendant and not as a director of Neology, and (3) communications between Neology's counsel and Mr. Diez Barroso which were shared with or given to Defendant, including Mr. Elias-Calles, regardless of the role Mr. Diez Barroso was playing at the time of the communication.

**IT IS SO ORDERED**.

DATED:  March 6, 2014

BARBARA L. MAJOR
United States Magistrate Judge